ALEXANDER B. CVITAN (SBN 81746),
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720), of
Email: marshah@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (2l3) 386-5583

Attorneys for Plaintiff Construction Laborers Trust
Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CUPERTINO ELECTRIC, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. _____<br><br>COMPLAINT FOR CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS<br><br>[29 U.S.C. §§ 185(a), 1132 & 1145] |

Comes now Plaintiff CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, and alleges, as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this action under Sections 502 and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 and 1145, as an action to collect contributions to multi-employer employee benefit

-1-

plans, and under Section 301(a) of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185(a), as an action to enforce collective bargaining agreements. Venue is proper in this district in that the plans are administered, and the performance and breach took place, in this district.

## PARTIES

2. Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company (CLTF) is a Delaware Limited Liability Company. Plaintiff CLTF appears solely in its capacity as an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health and Welfare Trust Fund for Southern California, Construction Laborers Pension Trust for Southern California, Construction Laborers Vacation Trust for Southern California (Vacation Trust), Laborers Training and Re-Training Trust Fund for Southern California, Fund for Construction Industry Advancement, Center for Contract Compliance, Laborers Contract Administration Trust Fund for Southern California, Laborers' Trusts Administrative Trust Fund for Southern California, and Southern California Partnership For Jobs (collectively "Trust Funds"). Each of the Trust Funds are express trusts, created by written agreements, are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and jointly-administered labor-management trusts under LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). The Plaintiff's principal place of business is in, and the Trust Funds are administered in, the County of Los Angeles, State of California.

3. Plaintiff is a fiduciary as to the Trust Funds, in that it:
    a. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the Trust Funds, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the Trust

339669v1

Funds in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

  b. Exercises authority or control respecting management or disposition of assets of the Trust Funds, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different Trust Funds, different participants, different time periods and different jobs.

4. Defendant, CUPERTINO ELECTRIC, INC. ("Employer"), is a Delaware corporation, duly licensed to engage in business as a construction contractor in the State of California in an industry affecting interstate commerce, with its principal place of business in the City of San Jose, County of Santa Clara, State of California.

## OTHERS

5. The Southern California District Council of Laborers and its affiliated Local Unions ("Laborers Union") was and is a labor organization representing employees in industries affecting commerce. The Union is not a party to this action.

## AGREEMENTS

6. On about August 19, 2004, the Employer entered into a collective bargaining agreement with the Laborers Union (Agreement), setting the terms and conditions of employment of certain of its employees, and agreeing to abide by the terms and conditions of the then-current multi-employer agreements of the Laborers Union, known as Master Labor Agreements (MLA), for work in the geographical jurisdiction of the 12 Southern California Counties. Said Agreement continues in force.

7. Pursuant to the Agreement and the MLA it incorporated, the Employer has submitted reports and paid contributions on behalf of certain of its employees to the

1  Trust Funds.  The Employer also received the benefits of the Collective Bargaining
2  Agreement by, among other things, being able to represent itself as signatory to an
3  agreement with the Laborers in order to obtain subcontracts from general contractors
4  who are subject to the MLA.

5        8.    Pursuant to the Collective Bargaining Agreement, and the MLA it
6  incorporates, and by the acts of submitting reports and contributions, the Employer
7  adopted and became obligated and bound to all the terms and conditions of the various
8  Trust Agreements which created each of the Trust Funds as they may be constituted in
9  their original form or as they may be subsequently amended.  The Agreement, MLA,
10 and Trust Agreements will hereinafter be collectively referred to as "Agreements".

11       9.    The Agreements obligate Employer to pay fringe benefit contributions at
12 the rates set forth in the Agreements for each hour worked (or paid for) by employees
13 performing services covered by the Agreements. The Employer is required to submit
14 monthly reports, detailing the hours worked or paid for each employee, broken down by
15 project.  Reports and contributions for each month of work are due by the 15th of the
16 following month, and delinquent if not reported and paid by the 20th of the following
17 month.  The failure to submit reports, even if no contributions are due for that month, is
18 considered a delinquency under the Agreements.

19       10.    As to the Vacation Trust, "Contributions to the Fund and any liquidated
20 damages payable in connection therewith, shall be deemed to be, and shall be, a part of
21 the wages due to the employees with respect to whose work such payments are made"
22 and "shall be deemed to be, and shall be treated as, subject to withholding tax and social
23 security and unemployment taxes as a part of the total compensation payable at the end
24 of the individual employer's payroll period during which such work is performed or
25 paid for, but the full per hour contribution shall be transmitted to the Fund."  In other
26 words, contributing employers deduct the vacation contribution from the pre-tax wages
27 of employees on each paycheck, and then report and transmit that amount, along with
28 other contributions, to the Vacation Trust each month.

339669v1

11. By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(B), Employer is obligated for payment of interest on delinquent contributions from the due date of the contribution through the payment date of the contribution, at the per annum rate of five percent (5%) over the rate set by the Federal Reserve Board at San Francisco, California, effective on the date each contribution is due.

12. By the Agreements and pursuant to 29 U.S.C. § 1132(g)(2)(C), Employer is obligated to pay to the Trust Funds liquidated damages for detriment caused by the failure of Employer to report and pay fringe benefit contributions in a timely manner, a sum equal to $25.00 or twenty percent (20%) of the unpaid contributions ($20.00 or 10% to the Laborers Contract Administration Trust Fund), whichever is the greater amount, for each of the Trust Funds to which Employer is required to contribute. The failure of employers to pay contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay contributions. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

13. The Agreement provides that "The subcontracting provisions contained in the Master Labor Agreement for the 11 Southern California Counties shall apply to all work performed in the 12 Southern California Counties, including San Diego." The MLA, in turn, provides that "Neither the Contractor nor any of his subcontractors shall subcontract any work to be done at the site of the construction, alteration, painting or

repair of a building, structure or other work coming within the jurisdiction of the Union except to a person, firm or corporation party to an appropriate current labor agreement with the Union or with the appropriate Local Union." In the event a contractor violates this provision, the MLA provides that "the Trust Funds may recover damages in an amount equal to the full fringe benefit contribution rate in effect under this Agreement at the time of the violation, plus interest, audit fees, and liquidated damages, for each hour of covered work performed by the non-signatory subcontractor's employees. Such damages shall be payable to the Vacation Trust and shall be damages and not for the benefit of any specific individual."

14. The Agreements provide the Trust Funds with specific authority to examine and copy all of Employer's payroll and business records which may be pertinent to determining whether Employer has reported all hours worked (or paid for) by employees who perform services covered under the Agreements, and/or has abided by the subcontracting provisions of the Agreements and has paid the appropriate fringe benefit contributions to the Trust Funds. The Agreements further provide that the Employer shall be responsible for the costs of such audit, and that if litigation is necessary to enforce the audit obligation, the Employer shall be liable for attorney fees, whether or not any delinquency is discovered.

## AUDIT

15. Pursuant to the authority in the Agreements to audit employer records, Plaintiff conducted and requested the Employer provide its books and records for audit, for the period of January 2011 – April 2015 (Audit Period).

16. On March 25, 2016, Plaintiff issued its findings (Audit). Plaintiff found that the Employer had subcontracted work covered by the Agreement to entities which were not a party to an agreement with the Union, thereby incurring damages measured by the covered work performed by those subcontractors, plus interest, liquidated damages and audit costs, in accordance with the Agreements. The Audit findings for

339669v1

subcontracting violations are summarized in the chart which is Exhibit "1" hereto, subtotaled by subcontractor and project.

17. The total amount found due in the Audit for subcontracting damages, is as follows:

| | |
|---|---|
| Fringe Benefits for Subcontracting Violations: | $1,856,861.94 |
| Interest on the above (through March 23, 2016): | $240,865.78 |
| Liquidated Damages on the above: | $364,701.08 |
| Audit Fees: | $4,240.00 |
| TOTAL: | $2,466,668.80 |

## TOLLING AGREEMENT

18. In order to attempt to settle the Audit, the parties entered into a written Tolling Agreement to toll any statute of limitations. Pursuant to that Tolling Agreement, "any and every statute of limitations applicable to the Trust Funds' right to take legal action (including CLTF's right to take action on its behalf) against the Employer to recover amounts due to any one or more of the Trust Funds, based on the Audit, is tolled retroactively as of the Effective Date" which is designated as May 1, 2016. A copy of the executed Tolling Agreement is attached hereto as Exhibit "2".

19. The parties were able to resolve some issues in the Audit, but were not able to resolve others. Therefore, counsel for the Trust Funds sent a notice to counsel for the Employer on February 11, 2020, terminating the Tolling Agreement. A copy of that letter is attached hereto as Exhibit "3".

20. As found by the Audit and summarized in Exhibit 1, the Employer subcontracted work covered by the Agreements to entities not a part to an agreement with the Laborers Union. Pursuant to the Agreement, the Employer is liable to the Trust Funds in an amount measured by the contributions which would have been paid if the work had been subcontracted to entities party to agreements with the Laborers Union which required contributions to the Trust Funds.

339669v1

21. Pursuant to the Agreements, the Employer is also liable for interest and liquidated damages. As found in the Audit, the Employer owes $756,231.07 in interest (through February 26, 2020), $371,372.40 in liquidated damages, and $4,240.00 in audit costs. Interest continues to accrue at the plan rate(s), described above, for unpaid amounts remaining due after February 26, 2020.

22. Under the terms of the Agreements and section 502(g)(2) of ERISA, the Employer is liable to the Trust Funds not only for the amount any delinquent contributions and subcontracting damages found due in an audit, but also for Pre-judgment interest on the delinquent sums at the rates provided in the Agreements; Liquidated damages as provided in the Agreements; Attorneys' fees and costs; and Costs of the audit.

23. As a result of Employer's failure to comply with the subcontracting provisions of the Agreements, Plaintiff is informed and believes and thereupon alleges that during the period from January 2011 to April 2015 there is now due and owing damages in the sum of $2,988,704.93 consisting of $1,856,861.46 in damages measured by the fringe benefit contributions that would be due by the subcontractors, $371,372.07 in liquidated damages, $756,231.07 in interest from the dates the contributions were to be paid, plus additional interest at the plan rate(s), current 7.25% per annum, and $4,240.00 in audit fees, as discovered by the Audit in March 2016. If any additional delinquent amounts including contributions, damages for subcontracting violations, liquidated damages, interest and audit fees are discovered to be owed by Employer, said amounts will be established by proof at the time of trial or other hearing.

24. Pursuant to the Agreements, and ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), the Employer is liable for attorney fees and costs of suit in this action, including any fees incurred in obtaining an audit, regardless of whether a further delinquency is found.

/ / /

/ / /

**WHEREFORE, the TRUST FUNDS pray for judgment as follows**:

A.  For $1,856,861.46 for the subcontracting damages found due in the Audit as required by the Agreements and 29 U.S.C. §§ 1132(a)(3)(B), 1132 (g)(2), and 1145;

B.  Interest on the subcontracting damages found due in (A), from the date the amounts became due through the entry of judgment, which is currently known to be $756,231.40 as of February 26, 2020, plus additional accrued interest thereafter at the plan rate(s), pursuant to the Agreements and 29 U.S.C. §§ 1132(a)(3)(B), 1132 (g)(2), and 1145;

C.  For liquidated damages on the delinquent subcontracting damages found due in (A) as required by the Agreements and 29 U.S.C. §§ 1132(a)(3)(B), 1132 (g)(2), and 1145; which is currently known to be $371,372,40;

D   For, according to proof, any additional amounts found due including contributions, subcontracting violations, interest, liquidated damages, and audit fees, pursuant to the Agreements and 29 U.S.C. §§ 29 U.S.C. §§ 1132(a)(3)(B), 1132 (g)(2), and 1145;

E.  For reasonable attorneys' fees and costs of suit, pursuant to Agreements and 29 U.S.C. § 1132(g)(2);

F.  For the cost of the audit of $4,240.00 so far, plus any further audit costs, pursuant to the Agreements and 29 U.S.C. § 1132(g)(2); and

G.  For such other and further relief as the Court deems proper.

Respectfully Submitted,

DATED:  February 28, 2020

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI of
REICH, ADELL & CVITAN,
A Professional Law Corporation

By:  /s/ Marsha M. Hamasaki
　　　MARSHA M. HAMASAKI
　　　Attorneys for Plaintiff

339669v1